

IN THE
TENTH COURT OF APPEALS

No. 10-17-00149-CR

EVERETT DALE WEBB,

                                        Appellant

 v.

THE STATE OF TEXAS,

                                        Appellee

From the 85th District Court
Brazos County, Texas
Trial Court No. 14-03111-CRF-85

## DISSENTING OPINION

The line. Where is the line? The line between basic advocacy and opening the door. Behind the door are any extraneous offenses similar to the one for which the defendant is being tried.

I write this dissenting opinion because I believe the appellate courts have unintentionally blurred the line and thus allowed the State to routinely introduce extraneous offense evidence for no reason other than it is easier to get a conviction when there is damning character conforming evidence.

Webb was charged, tried, and convicted for indecency with a child. If properly found guilty, a severe punishment is warranted. But let us not get ahead of ourselves. We must first focus on a proper trial to determine guilt. Not a trial based on Webb's character but, rather, only on the specific offense for which he is charged.

There is substantial case authority which expressly holds the admission of extraneous offense evidence of a nature similar to that for which the defendant is on trial is permitted. But, to overcome the general prohibition of using character conformity evidence to obtain a conviction, the cases require that the evidence must be admitted for a purpose other than showing that the current charges are consistent with the defendant's bad character. The "purpose" other than character conformity to justify admission in this type case is that the evidence is said to "rebut a defensive theory."

Defensive theories are generally reasons that a juror should question whether the State has adequately proved its case against the defendant. The defensive theory that generated the line of cases at issue in this appeal was first labeled the "frame-up" defense.[1] In these cases, the defendant would assert that the complaining witness, and sometimes others, sought to get the defendant convicted, or at least arrested, for their own reason; thus, the defendant would assert that he was being framed. To rebut the defensive theory of frame-up, the State was allowed to introduce evidence of similar crimes or bad acts which tended to show that the defendant had previously engaged in the type conduct at issue.

---

[1] A similar defense was labeled the "retaliation" defense.

The cases evolved to those in which the complaining witness is said to have "fabricated" the evidence of the offense. These type cases were labeled as raising a "fabrication defense," although it was sometimes referred to as the "fantasy defense." In this type case, there was frequently some type of explanation of a reason the charges were fanciful, such as the defendant would never engage in this type conduct, this person would never hurt a child, or this person is the real deal—a minister.[2]

The two lines of cases, specifically the "frame-up" and "fabrication" defenses, were merged in the case of *Bass v. State*. *Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App. 2008). In *Bass*, the Court of Criminal Appeals held there was no distinction between the two defenses for the purposes of admitting extraneous offense evidence to rebut the defensive theory. *Id*. at 563. In most of the plethora of cases in which either a frame-up or fabrication defense was the basis for admitting extraneous offense evidence, there was a common thread—the defendant was asserting some specific motive on the part of the victim or others for making the allegations against the defendant. As an alternative to motive, sometimes, as in *Bass*, the defense puts on evidence that the victim's reputation for truthfulness was not good, that she was known to misrepresent the truth. If not admitted in response to a "motive-based" defense, the prior extraneous offenses of the defendant were admitted because the defendant had opened the door by introducing evidence as to the complaining witness's character for truthfulness. In either instance, motive or character of the witness, the defense did something specific that could properly

---

[2] Some of these "defenses" would be supported by evidence of lack of opportunity, impediment, or other reason they could not have committed the charged offense.

be said as opening the door for the introduction of extraneous offenses.

That brings us to this case. There is no motive attributed to the victim. There was no effort to present evidence that the complaining witness had a reputation as being untruthful. This is not a case in which the defendant is saying the victim is fabricating this in retaliation for being disciplined by the defendant; or that the victim's mother, the defendant's soon to be ex-wife, is getting the alleged victim to make these allegations so that the defendant's custody is eliminated or restricted or so that the property division will favor the soon to be ex-wife. Quite simply, there is no allegation of a motive or other reason attributed to the victim for making the allegations in this case. The only "theory" being argued by the defendant is that the victim is not being truthful; that in this instance, she is lying.

In its opinion, the Court equates any attack on the victim's truthfulness as raising the defensive theory of fabrication.

Maybe the line is not there. Maybe the line is too subtle to draw/see/make in practice. But I believe there is a distinction to be made under Texas Rule of Evidence 404(b) between rebuttal of a defensive theory and attorneys simply doing their job and advocating for their client by making the State prove its case. Specifically, doing nothing more than revealing the inconsistencies in the victim's story in an effort to create reasonable doubt in the minds of the jury, which is nothing more than the most basic form of trial advocacy, should not open the door to the admission of extraneous offense evidence.

Moreover, if there is not a distinction, the defendant's attorney is on the horns of a dilemma. If the attorney does not engage in basic cross-examination or take other available steps to cast doubt on the credibility of the State's witnesses, most often the victim, then the attorney will be deemed ineffective. But if the attorney does engage in what some would characterize as an "attack" on the victim's credibility, the attorney will have opened the door to the introduction of extraneous offenses and then be deemed ineffective. Damned if you do and damned if you don't; and either way, the defendant is essentially left without a zealous advocate.

We need a brighter line; or possibly, we need a line.

In this case, Webb's attorney did not cross the line that I think is there. The trial court erred in holding that the line was crossed and, thus, in allowing the introduction of the damning extraneous offense evidence. The very fact that the State needed this evidence, as found by the Court in its subsequent Rule 403 analysis, suggests just how important it was in swaying the jury. Admission of the extraneous offenses allowed the jury to convict Webb using this character conformity evidence. I would reverse the trial court's judgment and remand this proceeding for a new trial so that the State will be required to try Webb on the charged offense and not simply for a determination of whether the allegations are in conformity with his character.


TOM GRAY
Chief Justice



Dissenting opinion issued and filed May 15, 2019